683 N.W.2d 761 (2004)
261 Mich.App. 657
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Danny Boyd SOLMONSON, Defendant-Appellant.
Docket No. 245178.
Court of Appeals of Michigan.
Submitted February 4, 2004, at Grand Rapids.
Decided March 4, 2004.
Approved for Publication April 29, 2004, at 9:05 a.m.
Released for Publication July 7, 2004.
*763 Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, William A. Forsyth, Prosecuting Attorney, and T. Lynn Hopkins, Assistant Prosecuting Attorney, for the people.
State Appellate Defender (by Randy E. Davidson), for the defendant on appeal.
Before: MURRAY, P.J., and MURPHY and MARKEY, JJ.
PER CURIAM.
Defendant appeals by right his convictions following a jury trial of operating a motor vehicle while under the influence of intoxicating liquor or while having an alcohol content of 0.10 grams or more per 100 milliliters of blood, third offense, M.C.L. §257.625(1), (8); operating a motor vehicle while his license was suspended or revoked, second offense, M.C.L. §257.904(1), (3)(b); and possessing open intoxicants in a motor vehicle on a highway, M.C.L. §257.624a. Defendant also appeals his sentence of two to ten years imprisonment for OUIL, third offense, enhanced as a third felony offender, M.C.L. §769.11, because it exceeded the sentence guidelines range of zero to seventeen months. We affirm defendant's convictions because they were supported by sufficient evidence and because defendant has failed to establish that his trial counsel was constitutionally deficient. We also affirm defendant's sentence for his OUIL conviction because the trial court did not clearly *764 err as matter of fact or law by finding defendant's criminal history was an objective, verifiable, substantial, and compelling reason to depart from the sentencing guidelines range and because the sentence imposed was among the range of permissible principled outcomes.
The testimony at trial established that the police found defendant unconscious in the driver's seat of a Chevrolet Cavalier station wagon with an open can of beer between his legs at 3:45 a.m. The car was parked just outside the white fog lines but was still on the road pavement. Although the engine was off, the keys were in the ignition and the engine was still warm. Defendant was alone but there were five full cans of cold beer on the passenger seat and one empty can in the back. The police found no one else in the area.
When two deputy sheriffs woke defendant and identified themselves, defendant replied, "You guys are f___ing ass holes." The deputies testified that defendant tried to turn the ignition key but one of the deputies prevented him from doing so. Defendant failed sobriety tests of reciting the alphabet and counting backwards. Defendant told the deputies that, "This is bullshit," and to just take him to "f___ing jail." Defendant also told the deputies that he was coming from a neighboring county, where he had been working, that he had started drinking at 6:00 p.m. that night, and that he had consumed six beers. Both deputies testified without objection that defendant never denied being the driver of the Cavalier.
The deputies honored defendant's request to be taken to jail and obtained a search warrant for two vials of defendant's blood, which were mailed to the Michigan State Police crime laboratory. A state police crime lab forensic scientist testified that she tested the blood samples and obtained results of 0.21 and 0.22 grams per one hundred milliliters of blood.
Defense counsel acknowledged that defendant was drunk and belligerent, and that defendant's driver's license was revoked, but he also claimed defendant was not operating the vehicle. Defense counsel theorized that someone else had driven defendant to where the police found him but he presented no evidence to support this theory. Defendant did not testify.
Defendant first argues that insufficient evidence supported his convictions. We disagree. This Court reviews de novo a claim that the evidence at trial was insufficient to support a conviction. People v. Herndon, 246 Mich.App. 371, 415, 633 N.W.2d 376 (2001). We must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found all the elements of the offense proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); People v. Wolfe, 440 Mich. 508, 515, 489 N.W.2d 748 (1992), mod. 441 Mich. 1201, 489 N.W.2d 748 (1992). All the elements of an offense may be proved beyond a reasonable doubt by circumstantial evidence and reasonable inferences therefrom. People v. Nowack, 462 Mich. 392, 400, 614 N.W.2d 78 (2000). Further, when reviewing claims of insufficient evidence, this Court must make all reasonable inferences and resolve all credibility conflicts in favor of the jury verdict. Id.; Wolfe, supra at 514-515, 489 N.W.2d 748. "`Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide.'" People v. Hardiman, 466 Mich. 417, 423-424, 646 N.W.2d 158 (2002), quoting People v. Konrad, 449 Mich. 263, 273 n. 6, 536 N.W.2d 517 (1995).
*765 Defendant relies on People v. Wood, 450 Mich. 399, 404-405, 538 N.W.2d 351 (1995), and People v. Burton, 252 Mich.App. 130, 651 N.W.2d 143 (2002), to argue that he was not "operating" the parked car when the police found him unconscious in the driver's seat, and there was reasonable doubt that he drove to that location while intoxicated. Defendant's reliance on Wood and Burton is misplaced. In Wood our Supreme Court limited People v. Pomeroy (On Rehearing), 419 Mich. 441, 444, 355 N.W.2d 98 (1984), which held, "a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping." In Burton the prosecutor charged that defendant was attempting to drive while intoxicated at the time the police found him unconscious in his lawfully parked vehicle with its engine running. This Court held that the prosecution failed to prove its theory that the unconscious defendant specifically intended to operate the vehicle while intoxicated at some point in the future but the police intervened before he could do so. Burton, supra at 143-144, 651 N.W.2d 143. But here, the prosecutor did not claim that the evidence established defendant was operating the vehicle at the point the police found him unconscious or that the police found defendant attempting to operate a vehicle while intoxicated. Here, the prosecutor argued that the evidence at trial presented a compelling circumstantial case that defendant had driven while intoxicated to the location where the police found him.
Although defense counsel argued below that someone else drove defendant to where the police found him, he presented no evidence at trial to support that theory. Moreover, the prosecution need not disprove all theories consistent with defendant's innocence; it need only introduce sufficient evidence to convince a reasonable jury of its theory of guilt despite the contradictory theory or evidence a defendant may offer. Hardiman, supra at 423-424, 646 N.W.2d 158; Konrad, supra at 273 n. 6, 536 N.W.2d 517. Also, the trial court specifically instructed the jury regarding the element of "operating" that a person "sleeping in a motionless car ... cannot be held to be presently operating a vehicle." Thus, because jurors are presumed to follow the trial court's instructions, People v. Dennis, 464 Mich. 567, 581, 628 N.W.2d 502 (2001), the jury must have concluded from the circumstantial evidence and reasonable inferences that the prosecutor met his burden of proving defendant was operating the vehicle in an intoxicated state before the police arrived. Because this Court must draw all reasonable inferences in favor of the jury verdict, Nowack, supra at 400, 614 N.W.2d 78, defendant's conviction must be affirmed.
Next, defendant argues he was denied a fair trial because his trial counsel failed to object to the use of his silence as a tacit admission of guilt. We disagree.
Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. People v. LeBlanc, 465 Mich. 575, 578, 640 N.W.2d 246 (2002). In order to overcome this presumption, defendant must first show that counsel's performance was deficient as measured against an objective standard of reasonableness under the circumstances and according to prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); People v. Pickens, 446 Mich. 298, 312-313, 521 N.W.2d 797 (1994). Second, defendant must show that the deficiency was so prejudicial that he was deprived of a fair trial such that there is a reasonable probability that but for counsel's unprofessional errors the trial outcome would have been different. Id. at 314, 521 N.W.2d 797; People v. *766 Toma, 462 Mich. 281, 302-303, 613 N.W.2d 694 (2000).
Defendant argues that allowing testimony that he never denied being the driver of the Cavalier violated the rule of People v. Bigge, 288 Mich. 417, 285 N.W. 5 (1939). Bigge, as modified by MRE 801(d)(2)(B), precludes the admission of a defendant's silence in the face of an accusation as an adoptive or tacit admission unless the defendant has manifested his adoption or belief in its truth. People v. Hackett, 460 Mich. 202, 213-215, n. 6, 596 N.W.2d 107 (1999); People v. McReavy, 436 Mich. 197, 213, 462 N.W.2d 1 (1990). Although defendant does not directly argue his constitutional rights were violated, the Bigge decision rested upon "constitutional limitations" and the right of fair trial and due process of law. Bigge, supra at 421, 285 N.W. 5.
A defendant's right to due process guaranteed by the Fourteenth Amendment is violated where the prosecutor uses his postarrest, post-Miranda[1] warning silence for impeachment or as substantive evidence unless it is used to contradict the defendant's trial testimony that he made a statement, that he cooperated with police, or that trial was his first opportunity to explain his version of events. Doyle v. Ohio, 426 U.S. 610, 619 n. 11, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); People v. Dennis, 464 Mich. 567, 573 n. 5, 628 N.W.2d 502 (2001). But in the instant case, nothing indicates that the police ever read defendant the Miranda warnings, even after his arrest. Moreover, although the prosecutor's questions were broad enough to encompass both prearrest and postarrest timeframes, the record reflects that defendant never invoked his constitutional right to silence. The defendant's right to due process is implicated only where his silence is attributable to either an invocation of his Fifth Amendment right or his reliance on the Miranda warnings. McReavy, supra at 201 n. 2, 462 N.W.2d 1; People v. Schollaert, 194 Mich.App. 158, 163, 486 N.W.2d 312 (1992). Thus, where a defendant has received no Miranda warnings, no constitutional difficulties arise from using the defendant's silence before or after his arrest as substantive evidence unless there is reason to conclude that his silence was attributable to the invocation of the defendant's Fifth Amendment privilege. Schollaert, supra at 165-166, 486 N.W.2d 312, citing United States v. Rivera, 944 F.2d 1563, 1568 (C.A.11, 1991), and McReavy, supra at 221 n. 28, 462 N.W.2d 1.
Here, because nothing indicates defendant invoked his constitutional right to silence, admissibility depends on compliance with the Michigan Rules of Evidence. But Bigge and MRE 801(d)(2)(B) are not implicated under the facts of this case. Both Bigge and MRE 801(d)(2)(B) address adopting through silence an assertion of another as one's own statement  a tacit admission. Hackett, supra at 212, 596 N.W.2d 107; citing McReavy, supra at 213, 462 N.W.2d 1.
"Silence, when the assertion of another person would naturally call for a dissent if it were untrue, may be equivalent to an assent to the assertion. This, however, fixes the party, by adoption, with the other person's assertion, and thus it ceases to be a question of conduct evidence, and involves a genuine admission in express words." [McReavy, supra at 213, 462 N.W.2d 1, quoting 2 Wigmore, Evidence (Chadbourn rev.), §292, pp. 229-230 (emphasis added).]
In Bigge, the defendant's brother-in-law stated in defendant's presence that the defendant was "guilty as hell." Bigge, *767 supra at 419, 285 N.W. 5. The Bigge Court found it was error to use the defendant's failure to deny his brother-in-law's statement as a tacit admission. See McReavy, supra at 213, 462 N.W.2d 1. Consistent with the Bigge rule, admissibility of a tacit admission under MRE 801(d)(2)(B) requires a " statement ... which the party has manifested an adoption or belief in its truth." A "statement" is defined by MRE 801(a) as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Here, there is no oral, written, or nonverbal conduct intended as an assertion that defendant adopted as his own statement. The police did not directly assert that defendant was the driver of the vehicle. Instead through their words and their conduct they advised that the defendant was being arrested for operating a vehicle while under the influence of intoxicating liquor. The prosecutor on appeal argues that defendant manifested his adoption of the accusation that he was driving the vehicle while intoxicated. But the prosecutor at trial argued:
Didn't you find it interesting that the defendant is told, when he has his chemical rights read, that he's being arrested for operating under the influence of intoxicating liquor, and the defendant has sufficient wherewithal to acknowledge this and says, "Just take me to F-ing jail." But he never says, "Hey, I wasn't driving."
Isn't that the first thing you're going to say, if you're arresting me for OUIL, for operating under the influence, is, "Hey, I wasn't driving?" He never says it. He has sufficient comprehension of this to know he's going to jail, but he doesn't complain about it because he's guilty. This isn't too complicated. [Emphasis added.]
Thus, the prosecutor did not argue that defendant tacitly adopted an assertion of the police as his own statement. Rather, the prosecutor argued that what defendant said together with what defendant did not say was evidence that defendant was conscious of his own guilt.
The distinction between a tacit admission requiring the adoption of a "statement" and nonresponsive conduct as evidence of consciousness of guilt is subtle but is one recognized by this Court and our Supreme Court. In McReavy, supra at 213-214, 462 N.W.2d 1, our Supreme Court found that the defendant's demeanor, nonresponsive conduct, and statements were all properly admitted. "Unlike the Bigge adoptive admission preclusion, the relevancy of defendant's behavior in the instant case in neither denying nor admitting the direct inquiry rests not on a third party's assertion but on the admissions defendant himself made, answers which circumstantially indicated defendant's knowledge of and involvement in the robbery." Id. In Schollaert, supra, this Court found that the defendant's failure to inquire why a number of sheriff's deputies were at the defendant's home at 3:30 in the morning was not evidence of a tacit admission but was evidence of the defendant's consciousness of guilt. The "defendant's failure to question the presence of the deputies at his home at 3:30 a.m. was not allowed into evidence as a tacit admission of any accusation. Rather, defendant's demeanor was admitted as substantive evidence that was relevant to a determination of defendant's guilty knowledge." Id. at 167, 486 N.W.2d 312.
So too, in the case at bar, what defendant said during administration of sobriety tests, "This is bullshit," and "Take me to jail," and defendant's nonresponsive conduct, were properly admitted as evidence of defendant's consciousness of guilt. Accordingly, the prosecutor's argument based on this evidence was also proper. *768 People v. Rice (On Remand), 235 Mich.App. 429, 437, 597 N.W.2d 843 (1999).
Because the evidence and argument at issue were proper, defendant has failed to establish that his trial counsel made a serious error. People v. Rodgers, 248 Mich.App. 702, 714-715, 645 N.W.2d 294 (2001). Moreover, a reasonable probability does not exist that the alleged errors were outcome-determinative in light of the compelling circumstantial case presented by the prosecutor, and defendant's failure to deny that he was driving would have been before the jury even without the alleged errors. Toma, supra at 302-303, 613 N.W.2d 694. Failure to prove either serious error or prejudice is fatal to defendant's claim of ineffective assistance of counsel. Strickland, supra at 687, 104 S.Ct. 2052; Pickens, supra at 309, 521 N.W.2d 797.
Next, defendant argues that although the trial court relied on defendant's criminal record, an objective and verifiable factor, to depart from the guidelines, the trial court erred by subjectively opining that defendant was "a danger to [himself] and a danger to the public" as a reason to exceed the guidelines range. Defendant argues that because the trial court based its guidelines departure in part on invalid subjective reasons, we must remand for resentencing. We again disagree.
Generally, upon conviction of a felony committed after January 1, 1999, a trial court must impose a sentence within the recommended range of accurately scored sentencing guidelines. M.C.L. §769.34(1), (2); People v. Hegwood, 465 Mich. 432, 438-439, 636 N.W.2d 127 (2001). A trial court may depart from the guidelines recommended range only "if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." M.C.L. §769.34(3); Hegwood, supra at 439-440, 636 N.W.2d 127. But the substantial and compelling reason justifying a guidelines departure must also be objective and verifiable, must keenly or irresistibly grab our attention, and must be of considerable worth in deciding the length of a sentence. People v. Babcock, 469 Mich. 247, 272, 666 N.W.2d 231 (2003), citing People v. Fields, 448 Mich. 58, 62, 67, 528 N.W.2d 176 (1995).
In the instant case, after granting a challenge to the guidelines scoring that reduced the recommended sentence range from seven to thirty-four months to zero to seventeen months, the trial court stated on the record it would depart from the guidelines.[2] The trial court said:
I'll accept [defense counsel's] corrections to the guidelines. And I'm going to exceed the guidelines here, Mr. Solmonson. I'm looking at the facts of  of this particular case. I'm also looking at your prior record that even eliminating the  the two drinking-and-driving convictions out of Montcalm County and  and Texas, you still have eight drinking-and-driving offenses, including this one, and that's just unacceptable. You're a danger to yourself and a danger to the public. I fully agree with the jury decision in this case, that you were again drinking and driving.
Defendant does not dispute that his criminal history is objective and verifiable. Nor does defendant contest the trial court's implicit finding that his criminal history had been given "inadequate or disproportionate *769 weight" in scoring the guidelines. M.C.L. §769.34(3)(b);[3]Babcock, supra at 267-268, 666 N.W.2d 231; People v. Armstrong, 247 Mich.App. 423, 425, 636 N.W.2d 785 (2001). Rather, defendant contends that the trial court also relied on subjective and unverifiable reasons, i.e., the conclusion that defendant was a danger to himself and the public, to justify departing from the guidelines. Defendant argues that the combination of objective and subjective reasons to depart from the guidelines requires that he be resentenced.
We agree with defendant that the trial court's conclusion that defendant was a danger to himself and the public was not itself an objective and verifiable factor. But we disagree with defendant's conclusion that he must be resentenced. When a trial court provides multiple substantial and compelling reasons for departure from the guidelines range, and some reasons are not substantial and compelling, our Supreme Court has instructed that this Court "must determine whether the trial court would have departed and would have departed to the same degree on the basis of the substantial and compelling reasons alone." Babcock, supra at 260, 666 N.W.2d 231. This Court must remand the case to the trial court for resentencing or rearticulation of its substantial and compelling reasons to justify its departure only if this Court cannot make such a determination or if the Court determines that the trial court would not have departed to the same degree. Id. at 260-261, 666 N.W.2d 231. But the trial court here did not articulate multiple substantial and compelling reasons for departure from the guidelines range. The trial court stated on the record that defendant's extensive record of drinking-and-driving convictions was the reason for its departure. The trial court's comment to defendant that, "You're a danger to yourself and a danger to the public," merely explained why defendant's extensive criminal history justified departure from the recommended sentence range. Even if the trial court viewed its comments as additional substantial and compelling reasons for departure, the record clearly indicates that "the trial court would have departed and would have departed to the same degree on the basis of the [single] substantial and compelling reason[ ] alone." Id. at 260, 666 N.W.2d 231.
We review for an abuse of discretion both the trial court's determination that defendant's extensive history of drinking-and-driving offenses constituted a substantial and compelling reason for departure from the guidelines, and the extent of the departure. Id. 264-265, 666 N.W.2d 231. But the trial court is not entitled to the utmost level of discretion articulated in Spalding v. Spalding, 355 Mich. 382, 384-385, 94 N.W.2d 810 (1959). Babcock, supra at 266, 666 N.W.2d 231. Instead, we must accord the trial court some degree of deference because of its "familiarity with the facts and its experience in sentencing, [and because] the trial court is better situated than the appellate court to determine whether a departure is warranted in a particular case." Id. at 268-269, 666 N.W.2d 231. This standard of review "acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." Id. at 269, 666 N.W.2d 231. The trial court abuses its discretion when the sentence imposed is not within the *770 range of principled outcomes. Id. at 269, 274, 666 N.W.2d 231.
In this case, the "trial court's familiarity with the facts and its experience in sentencing," defendant's extensive criminal history reflecting that past sentences of probation, jail, and prison had not deterred him, and the trial court's legitimate concern for the protection of society, justify the conclusion that a prison sentence of 2-10 years is within the "permissible principled range of outcomes." Id. at 274, 666 N.W.2d 231. Indeed, defendant's criminal history supports a conclusion that an intermediate sanction as required under the guidelines would be less likely to further the traditional goals of sentencing[4] than a prison sentence. Accordingly, the trial court did not abuse its discretion by concluding that a departure from the guidelines range would render the sentence it imposed more proportionate to the seriousness of defendant's conduct and his criminal history than would a sentence within the guidelines. Id. at 264, 272, 666 N.W.2d 231.
We affirm defendant's convictions and sentences.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Also, because the upper limit of the sentencing guidelines range here was less than eighteen months, M.C.L. §769.34(4)(a) required an "intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections." An "intermediate sanction" may not include a prison sentence. People v. Stauffer, 465 Mich. 633, 635, 640 N.W.2d 869 (2002).
[3] M.C.L. §769.34(3)(b) provides: "The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight."
[4] The goals of sentencing include: (a) reformation of the offender; (b) protection of society; (c) disciplining the offender; and (d) the deterrence of others from committing like offenses. People v. Snow, 386 Mich. 586, 592, 194 N.W.2d 314 (1972); People v. Rice (On Remand), 235 Mich.App. 429, 446, 597 N.W.2d 843 (1999).